I would answer the certified questions as follows:
"I. Does the AMFMA require injury to competition as a prerequisite to liability under that act, or does injury to competitors suffice to establish such liability?"
Sections 6 and 9 of the AMFMA make it clear that the sale of motor fuel below cost is unlawful only "where the effect is to injure competition." This Court, in State v. MapcoPetroleum, Inc., 519 So.2d 1275 (Ala. 1987), clearly stated that "an injurious effect upon competition," as distinguished from mere intent to injure individual competitors, is an essential element of an AMFMA violation.519 So.2d at 1286. If a mere showing of "lost profits" resulting from "competitive price-cutting" were sufficient to establish violation, there would have been no reason for the legislature to require proof of "an injurious effect upon competition." Critical to this Court's decision in State v. Mapco
was that the AMFMA restricted only those sales in which the effect of selling below cost was to injure competition and in which it did not impermissibly penalize ordinary injury to competitors.
Much of the phraseology found in the AMFMA obviously was borrowed from federal antitrust laws. The AMFMA is aimed at preventing (a) predatory below-cost pricing at retail, and (b) discriminatory pricing at wholesale. The same type of illegal conduct is the subject of the Sherman Act and the Robinson-Patman Act, respectively. Federal case law addressing predatory pricing and discriminatory pricing at wholesale make it clear that there is a fundamental difference between an "injurious effect upon competition" and mere injury to a competitor. An "injurious effect upon competition" does not refer to actions that merely injure individual competitors, but rather to actions that harm the competitive process. SeeBrown Shoe Co. v. United States, 370 U.S. 294, 319-20,82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962).
"II. If injury to competition rather than to competitors is a prerequisite to liability under the AMFMA, what is the relevance of a defendant's market share in determining the existence of injury to competition?"
As I have stated above, an "injurious effect upon competition" requires a showing of injury to the competitive process itself. In regard to below-cost sales of gasoline, evidence of mere "lost profits," without more, is insufficient to make such a showing. Theoretical "lost profits" can be shown by any competitor when any other competitor reduces its price, whether that price is above or below cost. Where there is no credible threat that an alleged "predator's" pricing practice will allow it to "dominate" the market or to destroy a segment thereof, there is no showing of an injurious effect upon competition, in my opinion. A variety of factors must be assessed in this regard, including the relevant market share of the defendant, the number of other competitors in the relevant market, the degree of competitiveness in the relevant market, and a showing as to whether the pricing activity of the defendant "substantially lessened the ability" of other competitors in business.
"III. Is lack of intent to injury competition an affirmative defense, permitting summary judgment on that issue under the AMFMA?"
The plaintiffs, in their brief, concede that "lack of harmful intent" is an affirmative defense to an AMFMA claim. I agree with Mapco that where all of the evidence shows that a defendant possesses no "harmful intent" in its pricing practices, i.e., that its intent was merely to establish a competitive price, and that it had no intent to injure either individual competitors or competition in general, a summary judgment is appropriate, just as if any other "affirmative *Page 425 
defense" at law had been shown without dispute to exist.
"IV. Can a defendant under the AMFMA invoke the 'meeting competition' defense contained in Section 8 of that statute when the defendant prices motor fuel one or two cents below the price set by its competitors?"
If the price differential is based upon facts that would lead a reasonable and prudent person to believe that a seller's maintenance of the differential is necessary in order to maintain a competitive balance between that seller's product and competitors' products that have certain inherent competitive advantages or disadvantages (i.e., greater brand acceptability, a greater customer preference, or cost-of-product differential), the maintenance of such a retail differential comports with the concept of "meeting competition." "The test in such a case is not necessarily a difference in the quality of the products, but the fact that the public is willing to buy one product at a higher price in a normal market." Anheuser-Busch, Inc. v. FTC, 54 F.T.C. 277 (1957), cited with approval, Falls CityIndustries, Inc. v. Vanco Beverage, Inc., 460 U.S. 428,450, n. 16, 103 S.Ct. 1282, 1296 n. 16, 75 L.Ed.2d 174 (1983). In the context of the retail gasoline business, it seems clear to me that sellers of "independent" or "non-major" brand regular unleaded gasoline, such as Mapco, Western, Red Acte, might have to sell at a lower price in order to remain competitive with vendors of "major" brand regular unleaded gasolines, such as Exxon, Shell, Amoco, Gulf, and Mobil, which have the benefit of greater brand acceptability and stronger customer preference and the concomitant disadvantage of higher cost of supplies (caused by their admittedly successful marketing philosophy of creating the foregoing advantages through national advertising, credit cards, facilities at the most favorable locations, multi-layered distribution systems, car washes, etc.). Thus, where the "normal" differential represents a price spread that can obtain between the two types of gasoline "without major competitive repercussion," FTCv. Sun Oil Co., 371 U.S. 505, 83 S.Ct. 358, 9 L.Ed.2d 466
(1963), I believe that the AMFMA permits the seller of the lesser accepted brand to rely upon the "meeting competition" defense, if necessary.
I must disagree with the answers supplied by the Court.